UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| OSCAR SANTIAGO, | ) | CASE NO. 3:10 CV 173 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| DR. KURT RINGLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Pro se Plaintiff Oscar Santiago filed the above-captioned action under 42 U.S.C. § 1983 against Marion Correctional Institution ("MCI") Medical Director Dr. Kurt Ringle, MCI Assistant Medical Director Janet Mosher, MCI Pharmacist Technician Lisa Meadows, MCI Assistant Health Care Administrator Kimberlee Parsell, MCI Warden Margaret Beightler, MCI Deputy Warden of Special Services Jason Bunting, and MCI employees John and Jane Doe. In the complaint, plaintiff alleges he did not receive proper medical care. He seeks $ 550,000.00 in damages.

**Background**

Mr. Santiago contends his illness was not properly diagnosed and treated by medical personnel at MCI. He states he began to experience swelling in his extremities accompanied by

severe pain in January 2008. He was referred to Dr. Mosher who prescribed two antibiotics for him on January 31, 2008. One of the antibiotics was a sulfa drug. The next day, February 1, 2008, Mr. Santiago was seen by Dr. Ringle, who diagnosed the condition as Erythema Nodosum, a skin inflammation of the fatty layer of skin.[1] Dr. Ringle prescribed Clarithromycin and told Mr. Santiago to continue taking the medications prescribed by Dr. Mosher until his new prescription was filled. He was called to the pharmacy three days later on February 4, 2008. At that time, he turned in the remaining supply of medication prescribed by Dr. Ringle. He later learned that sulpha drugs can aggravate the symptoms of Erythema Nodosum.

The next morning, Mr. Santiago woke up in excruciating pain. He was transported to the Ohio State University Hospital where he was admitted. Two days later, he was transported to the Corrections Medical Center in Columbus, Ohio. He remained there until February 11, 2008 when he was returned to MCI. He contends he was still confined to a wheel chair due to the pain and swelling. He returned to the Corrections Medical Center on February 20, 2008 for a consultation with a dermatologist. She recommended Compression Stockings, topical steroid Triamcinolone Acetonide, and SSKI, also known as Potassium Iodide.

Mr. Santiago claims it was difficult to obtain the recommended medications. He was seen by Dr. Ringle upon his return to MCI later that day. He claims Dr. Ringle promised to prescribe all of the recommended medications by February 22, 2008. Dr. Ringle, however, went on vacation without remembering to write the prescriptions. Dr. Mosher wrote a prescription for the topical steroid Triamcinolone, but did not fill the SSKI. Pharmacy Technician Ms. Meadows filled the steroid prescription and told him he would need to be measured for the compression

---

[1] See http://www.medicinenet.com/erythema_nodosum/article.htm

stockings. She told him she could not give him SSKI without a prescription. Mr. Santiago's mother telephoned the prison and spoke with Ms. Parsell about her son's medications. She was told SSKI was not available at the institution and filling it could take a while. His mother also telephoned the Warden. She was assured the medication would be provided. He was informed by Mr. Bunting on March 3, 2008 that Dr. Ringle denied the SSKI. Dr. Ringle indicated to Mr. Bunting that the medication was a compound which was not stocked by the prison pharmacy. The ingredients would have to be ordered and formulated. His mother called the regional director of the Ohio Department of Rehabilitation and Correction to complain about her son's medical care. Dr. Ringle issued the prescription on March 5, 2008. Mr. Santiago did not receive the medication from the pharmacist until March 17, 2008. He claims he noticed an immediate improvement in his condition when he began taking the SSKI.

Mr. Santiago asserts claims for violation of the Eighth and Fourteenth Amendments. He claims Dr. Mosher failed to investigate the side effects and risks of the medication she prescribed. He claims Dr. Ringle provided inadequate medical care, and delayed signing the prescriptions. He asserts Pharmacy Technician Lisa Meadows did not measure his compression stockings before issuing them, and failed to distribute the SSKI to him in a timely manner. Finally, he contends Ms. Parsell, Mr. Bunting, Ms. Beightler and John and Jane Doe failed to intervene to persuade the other defendants to act.

**Analysis**

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; Siller v. Dean, No. 99-5323, 2000 WL 145167 , at *2 (6th Cir. Feb. 1, 2000); see Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims). For the reasons stated below, the claims against defendants Meadows, Parsell, Beightler and Bunting are dismissed pursuant to 28 U.S.C. § 1915A.

As an initial matter, Ms. Parsell, Ms. Beightler and Mr. Bunting are all named as defendants because they allegedly failed to adequately supervise the medical staff at the prison. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999) (citing Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in unconstitutional behavior. Id. Liability, therefore, must lie upon more than a mere right to control employees and cannot rely on simple negligence. Id. In order for liability to attach to any of these supervisors, Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Id. Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their employees. Id.; see also Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.1995). Mr. Santiago alleges that Ms. Parsell and Warden Beightler received telephone calls from his mother and did not assure that he was given the medications recommended by the Corrections Medical Center Dermatologist. He claims Mr. Bunting delivered messages between Mr. Santiago and Dr. Ringle. None of these allegations suggest that these defendants actively participated in the alleged unconstitutional behavior.

Mr. Santiago also fails to state a claim against Ms. Meadows.  Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  Id. Seriousness is measured in response to "contemporary standards of decency."  Hudson v. McMilian, 503 U.S. 1,8 (1992).  Routine discomforts of prison life do not suffice.  Id.  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment.  Id. at 9.  Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind.  Id.  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  Liability cannot be predicated solely on negligence.  Id.  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

As a threshold matter, plaintiff fails to establish the objective component of his claim.  First, he claimed Ms. Meadows failed to properly measure him for compression stockings. He contends she merely did a visual assessment.  He does not complain that the stockings were the wrong size.  There is no suggestion that this action was a sufficiently harsh deprivation to trigger Eighth Amendment protections.

In addition, Mr. Santiago has not established Ms. Meadows acted with a sufficiently

5

culpable mental state to justify a finding of liability under the Eighth Amendment. An official acts with deliberate indifference when "he acts with criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm. Id. at 837. Mere negligence will not suffice. Id. at 835-36. Mr. Santiago claims Ms. Meadows filled his prescription for the topical steroid, but claimed no knowledge of the SSKI. She would not provide the medication without a prescription. He also contends that it took a long time for Ms. Meadows to supply him with the SSKI when the prescription had been issued. He was told that the compound was one that was not stocked by the prison and that the ingredients would have to be ordered and mixed. Even liberally construed, the complaint contains no allegations indicating that this pharmacy technician acted with the degree of culpability needed to sustain an Eighth Amendment claim against her.

Moreover, Mr. Santiago has not stated a claim against Ms. Meadows for violation of the Fourteenth Amendment. The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the state of a person's life, liberty or property. Harris v. City of Akron, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. Id.

As an initial matter, it is not clear whether Mr. Santiago intends to assert a claim for procedural due process, substantive due process, or both. To the extent he intends to assert a

procedural due process claim, it is subject to dismissal. Mr. Santiago must plead and prove either that he was deprived of liberty or property as a result of an established state procedure that itself violates due process rights; or that the defendants deprived him of liberty or property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation. Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir 1991); see Vicory v. Walton, 721 F.2d 1062, 1064 (6th Cir. 1983). Mr. Santiago is not challenging an established state procedure, statute or local ordinance. Instead, he is asserting his medications were delayed due to unauthorized acts of the defendant.

To state a procedural due process claim based upon alleged unauthorized acts of the defendants, Mr. Santiago must also plead and prove that state remedies for redressing the wrong are inadequate. Macene, 951 F.2d at 706; Vicory, 721 F.2d at 1064. Ohio Admin Code § 5120-9-29 provides procedures for inmates to file grievances. Mr. Santiago has not demonstrated that these procedures are inadequate has not claimed the state remedy was inadequate. He therefore has not stated a claim for denial of procedural due process.

To the extent Mr. Santiago intended to assert a substantive due process claim, it too is subject to dismissal. Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325 (1937). Due process claims of this nature involve official acts which cause a deprivation of a substantive right specified in the Constitution or a federal statute. Mertik v. Blalock, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." See United States v. Salerno, 481

7

U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. Parate v. Isibor, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a state agent. Id. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." Id.

Mr. Santiago does not assert a deprivation of another right specified in the Constitution and does not allege conduct so severe that it shocks the conscience. Where the plaintiff does not provide facts to support either of these theories of recovery, his substantive due process claim will survive only if the state's action was not rationally related to a legitimate state interest. See e.g., Reno v. Flores, 507 U.S. 292, 301-05 (1993). Mr. Santiago alleges pharmacy technician Ms. Meadows refused to provide medication without a prescription, and failed to take precise measurements for compression stockings, and took a long time to fill the prescription when it was issued. States have a legitimate interest in controlling the distribution of medications, particularly within the prison system. A pharmacy technician would have no legal authority to dispense the medication without a prescription. States also have an interest in controlling costs. They cannot be expected to stock every medication or combination of medications that a particular prisoner may need. There is no reasonable suggestion in the Complaint that the plaintiff's Fourteenth Amendment rights were violated.

## Conclusion

Accordingly, plaintiff's claims against defendants Meadows, Parsell, Beightler and Bunting are dismissed under section 1915A. Further, the court certifies pursuant to 28 U.S.C. §

1915(a)(3) that an appeal from this decision could not be taken in good faith.[2] This action will proceed solely against Dr. Ringle and Dr. Mosher. The Clerk's Office is directed to forward the appropriate documents to the U.S. Marshal for service of process and shall include a copy of this order in the documents to be served upon the defendants.

IT IS SO ORDERED.

/s/ David A. Katz

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a) provides, in pertinent part:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.