IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

OSCAR SANTIAGO,

                Plaintiff,                Case No. 3:10 CV 173

   -vs-

                                      MEMORANDUM OPINION

DR. KURT RINGLE, et al.,

                Defendant.

KATZ, J.

Plaintiff Oscar Santiago is currently incarcerated at the Marion Correctional Institute ("MCI") in Marion County, Ohio. Plaintiff filed this Section 1983 action against Defendant Ohio Department of Rehabilitation and Corrections ("ODRC") physicians Kurt Ringle (then MCI's Medical Director), and Constance Mosher (then MCI's Assistant Medical Director), alleging that Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. On September 9, 2011, this Court declined to adopt the Magistrate's Report and Recommendation, and denied Defendants' motion for summary judgment. (Doc. 29). Defendants subsequently filed the instant motions for reconsideration, (Doc. 32), and for summary judgment on the grounds of qualified immunity. (Doc. 33). Plaintiff responded through counsel to both motions, (Doc. 40), and Defendants replied. (Doc. 41) For the reasons stated herein, Defendants' motions are granted.

**I. Discovery Issues**

At the outset, the Court notes that Plaintiff raised several discovery complaints in his response to Defendants' original motion for summary judgment. Plaintiff's complaints, however,

are without merit and do not demonstrate an inability to present facts essential to justify his opposition to Defendants' summary judgment motions. *See* FED. R. CIV. P. 56(d).[1]

Specifically, Plaintiff claims that his medical records were provided in a small, unusable format (four pages of records per produced page), that Defendants did not produce a copy of ODRC policies, and that Defendants' discovery responses were untimely. Despite these claims, however, Defendants reproduced Plaintiff's medical records on January 26, 2011 with one page per side of paper, and also indicated on that date that production of ODRC policies would be unduly burdensome and costly given that they are available in the library at Plaintiff's institution. (Doc. 22-1 at 1). Regarding the timing of Defendants' productions, Plaintiff did not request discovery until November 18, 2011, nearly eight months after filing his complaint. Defendants then requested, and were granted, until January 7, 2011 to respond to Plaintiff's discovery requests. Thereafter, Defendants timely moved for summary judgment on January 10, 2011 per this Court's scheduling order. While Plaintiff raised objections to Defendants' discovery responses, Defendants immediately responded to those objections on January 26, as described above. Further, despite offering factual analysis in response to the instant motions for reconsideration and summary judgment, Plaintiff made no mention of outstanding discovery issues or otherwise indicated that he is unable to present facts essential to justify his opposition. (Doc. 40).

**II. Motion for Reconsideration**

---

[1] The Court indicated in its Memorandum Opinion denying Defendants' summary judgment motion that Plaintiff's discovery issues would be addressed at a future status conference. (Doc. 29 at 1 n.1). A conference is unnecessary, however, for the reasons described above.

"District Courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.  A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citations omitted); *see also Kelly v. City of Fort Thomas* 610 F. Supp. 2d 759, 779 (E.D. Ky. 2009) (citing *id.*) (granting defendants' motion to reconsider denial of summary judgment).  "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 2004 U.S. App. LEXIS 2067, at \*\*26-\*\*27 (6th Cir. Feb. 6, 2004) (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

At all times relevant, Dr. Ringle was MCI's Medical Director, and Dr. Mosher was MCI's Assistant Medical Director.  At issue is a delay in Plaintiff's receipt of three treatments that an Ohio State University ("OSU") dermatologist recommended for Plaintiff's *Erytema Nodosum* (an uncomfortable, but non-dangerous skin rash).  The dermatologist made the recommendations at a February 20, 2008 dermatology consult, which was ordered by Dr. Ringle.

After the February 20 consult, Dr. Mosher transcribed the dermatologist's recommendations the same day.  Dr. Mosher's order remained unsigned, however, until February 27.  Plaintiff subsequently received the first treatment (Triamcinolone) on February 29, and the second treatment (compression stockings) on March 10.  The third treatment, (SSKI), is a non-life saving, non-formulary drug not kept in stock by the ODRC.  As such the drug required a request

from MCI's Medical Director (Dr. Ringle) to the ODRC Central Office. Dr. Ringle made the request on March 4, and Plaintiff received the drug around March 14-17.[2]

In denying Defendants' motion for summary judgment, the Court followed several Sixth Circuit cases that applied the Supreme Court's pronouncement in *Estelle v. Gamble*, 429 U.S. 97 (1976), that "interruption of a prescribed plan of treatment could constitute a constitutional violation." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 199) (citing *Estelle*, 429 U.S. at 105); *Hines v. Wilkinson*, 1994 U.S. App. LEXIS 21598, *2, *8 (6th Cir. Aug. 10, 1994); *Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983). On reconsideration, however, the Court finds that it mis-apprehended the facts regarding the dermatologist's treatments, and the Court must now grant Defendants' motion for reconsideration and enter summary judgment in their favor. Specifically, Defendants indicated in their original motion for summary judgment that the dermatologist's treatments were recommendations only. (Doc. 18 at 5, 6). As such, the dermatologist's treatments were not a prescribed plan of treatment, but were recommended for consideration by the attending physicians; i.e., Defendants. There was, therefore, never an interruption in a prescribed plan of treatment, and Plaintiff's complaint that Defendants' course of treatment did not immediately comport with recommendations made by a consulting physician does not state a cognizable claim under the *Eighth Amendment*.

---

[2] The Magistrate's Report and Recommendation ("R&R") indicates that Plaintiff began receiving the SSKI on March 17, 2008. (Doc. 26 at 3). Defendants did not dispute this date in their response to Plaintiff's objections to the R&R, and this Court's denial of Defendants' summary judgment motion likewise indicated that Plaintiff began receiving the SSKI on March 17. (Doc. 29 at 5). Defendants now urge on reconsideration that evidence suggests Plaintiff began receiving the SSKI three days earlier, on March 14. As explained below, however, this discrepancy is immaterial to the disposition of Plaintiff's claim.

These facts are buttressed by Dr. Mosher's January 6, 2011 affidavit–attached to Defendants' original summary judgment motion–which explains that "all medical orders for treatments and medications were timely processed and administered to the Plaintiff in accordance with [ODRC] procedures." (Doc. 18-4 at ¶16). Defendants provided further explanation of these facts via Dr. Mosher's October 18, 2011 affidavit–attached to Defendants' motion for reconsideration–which states both that "[a]s of February 20, 2008, the above medications/treatments were recommendations for the consideration of the attending physician(s)," (Doc. 32-1 at ¶7), and that "[t]he Medical Director has/had the discretion to determine whether and/or when to prescribe/implement a consulting physician's recommendations." *Id*. at ¶8. Dr. Mosher's affidavit goes on to detail the medical reasons why Defendants, in their discretion, did not immediately implement the dermatologist's recommendations. *Id*. at ¶¶10-12. Further, Defendants' motion for reconsideration reemphasizes that because SSKI is a non-life saving, non-formulary drug, it requires a request from the Medical Director to the ODRC Central Office. Dr. Mosher's affidavit explains that Dr. Ringle "was not required to seek approval for non-formulary medications that are neither classified as emergent nor life-saving." *Id*. at ¶13.

To be clear, the Court does not see this information as new evidence, but as a clarification of the facts presented to the Court on Defendants' original motion for summary judgment. Accordingly, the Court will grant Defendants' motion for reconsideration so as to prevent manifest injustice, and will enter summary judgment in favor of Defendants.

**III. Qualified Immunity**

Defendants seek leave for this Court to consider Defendants' second motion for summary judgment on grounds of qualified immunity. (Doc. 33). Defendants' motion is granted.

The federal doctrine of qualified immunity provides that government officials performing discretionary functions are immune from suit unless the plaintiff shows that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Champion*, 380 F.3d at 900. Determining whether Defendants are entitled to qualified immunity involves a two-step inquiry. *See Scott v. Haris*, 550 U.S. 372, 277 (2007); *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007). First, the Court examines whether the facts show that a constitutional violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if a constitutional violation is found, the Court examines whether the constitutional right was clearly established such that an objectively reasonable official would have known his or her conduct violated the right. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Importantly, qualified immunity is a question of law. *Champion*, 380 F.3d at 900. "[I]f there is a disagreement as to the facts, the reviewing court must consider the evidence in the light most favorable to the Plaintiff." *Landis v. Baker*, 297 Fed. App'x. 453, 2008 U.S. App. Lexis 21945, at \*\*18 (6th Cir. Oct. 16, 2008) (citing *Champion*, 380 F.3d at 900). Further, "[i]f the legal question is dependent upon which version of facts one believes, then the jury must determine liability." *Landis*, 2008 U.S. App. LEXIS 21945, at \*\*17. Finally, "[t]he plaintiff has the burden to 'show that the defendant is not entitled' to qualified immunity." *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005) (quoting *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999)).

In the instant matter, Plaintiff cannot demonstrate that a constitutional violation occurred for the same reasons articulated in the foregoing analysis of Defendants' motion for reconsideration.  As such, Defendants are entitled to qualified immunity, and their second motion for summary judgment is granted.

**IV.  Conclusion**

For the reasons stated herein, Defendants' motions for reconsideration, (Doc. 32), and for qualified immunity, (Doc. 33), are granted.  Case closed.

IT IS SO ORDERED.

   s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE